**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| ACUITY, | : | |
| A MUTUAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-06414-JMG |
| | : | |
| STONE HAVEN SERVICES, LLC, | : | |
| Defendant. | : | |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                              **December 23, 2021**

**I.     OVERVIEW**

Defendant ("the Insured") requested an insurance policy with $75,000 of coverage for the personal property in one of the Insured's buildings. Plaintiff ("the Insurer") accidentally sent the Insured a policy with $*750*,000 of coverage. The Insured signed the policy and paid the premium, which was commensurate with $750,000 of coverage. Less than a month later, a fire broke out in the Insured's building, destroying the personal property within it.

The Insurer claims that it should be liable for only $75,000 of coverage because that was the parties' original intent. The Insured argues that it should be entitled to $750,000 of coverage because that is what the contract's unambiguous text provides. The Insured also claims that the Insurer has acted in bad faith by delaying payment to bring this suit.

Before the Court is the Insurer's motion for summary judgment on all counts. For the reasons that follow, the Court grants the Insurer's motion only in part.

II.      **FACTUAL BACKGROUND**

a.      **Allegations**

The Insured owned a building and the personal property in it. Plaintiff's Statement of Undisputed Facts ("SUF"), ECF No. 24, ¶ 1; Defendant's Response in Opposition to the Insurer's Motion for Summary Judgment ("SDF"), ECF No. 25, ¶ 1. For some time, the Insured had maintained an insurance policy with the Insurer covering both the building and the personal property. SUF ¶ 6; SDF ¶ 6.

On August 1, 2020, the Insured emailed the Insurer's broker to inform the broker that it had begun using the building for a new purpose. SUF ¶ 8; SDF ¶ 8. The Insured believed this change in use required a change in coverage, so the Insured asked the Insurer's broker to increase its insurance such that the building would be covered up to "400k" and the personal property would be covered up to "75k." SUF ¶ 9; SDF ¶ 9. The Insurer's broker passed this information and request along to the Insurer faithfully. SUF ¶ 11; SDF ¶ 11.

Per the Insured's request, the Insurer drafted an amended policy. SUF ¶ 13; SDF ¶ 13. In the amended policy, however, the Insurer mistakenly covered the Insured's personal property up to "$750,000" and increased the Insurer's premium commensurately. *Id.*; *see also* Joint Appendix ("JA"), ECF No. 23-2, at 1.

The Insurer's broker emailed this amended policy to the Insured on September 11, 2020. SUF ¶¶ 13–14; SDF ¶¶ 13–14. In the body of the email, the Insurer's broker described the policy as covering the Insured's personal property up to only "$75,000." But the policy itself clearly provided for "$750,000" of coverage, *id.*, and contained an integration clause that stated, "[t]his policy contains **_all_** the agreements between you and us concerning the insurance afforded." JA 46.

The Insured executed the policy and paid the policy's premium. SUF ¶ 23; SDF ¶ 23. The policy became effective on September 2, 2020. SUF ¶ 15; SDF ¶ 15. Just over three weeks later, a fire broke out in the Insured's building that damaged the Insured's personal property. SUF ¶ 16; SDF ¶ 16.

The Insured filed a property damage claim with the Insurer pursuant to the policy. SUF ¶ 17; SDF ¶ 17. But rather than honor the claim, the Insurer issued an amendment to the policy reducing its personal property coverage to $75,000 and refunded the Insured's premium commensurately. SUF ¶¶ 19, 23; SDF ¶¶ 19, 23. The Insured rejected the Insurer's amendment to the policy, and this suit for declaratory judgment followed. SUF ¶ 24; SDF ¶ 24.

### b.    Procedural History

On December 22, 2020, the Insurer filed this lawsuit seeking a declaratory judgment that its contract with the Insured provided for only $75,000 of personal property coverage. *See* ECF No. 1, Compl. The Insured answered asserting counterclaims for breach of contract and bad faith. *See* ECF No. 2, Answer. The Insurer moved to dismiss the Insured's counterclaim of bad faith, but the Court denied the motion. *See* ECF Nos. 3, 16.

Now that discovery has closed, the Insurer has moved for summary judgment on all counts. *See* ECF No. 23. The Insurer's motion for summary judgment is presently before the Court.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*,

954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.   ANALYSIS

This suit involves three claims: the Insurer's claim for reformation of the contract and the Insured's counterclaims for breach of contract and bad faith. The claims for reformation and breach of contract turn on the same principles, so the Court will address them together and first. The Court will then address the Insured's counterclaim of bad faith.

### a. Reformation & Breach of Contract

In this case, there is no question that a written contract exists between the Insurer and the Insured providing the Insured with $750,000 of personal property coverage. Formation of a contract requires an offer, an acceptance, and consideration. *Jenkins v. Cty. of Schuylkill*, 441 Pa. Super. 642, 648 (1995). Here, the Insurer offered an insurance policy with $750,000 of personal property coverage to the Insured by having the Insurer's broker email the Insured such a policy. The Insured accepted that offer by signing the policy and paying the policy's premium. And this agreement was supported by consideration—from the Insured in the form of the premium, and from the Insurer in the form of a promise to insure the Insured's personal property.

Ordinarily, the Insured's failure to perform its obligations under the terms of this written contract would constitute breach of contract. *Sewer Auth. of City of Scranton v. Pennsylvania Infrastructure Inv. Auth. of Com.*, 81 A.3d 1031, 1042 (Pa. Commw. Ct. 2013). But the Insurer argues the written terms of the contract should be *reformed*. If reformation is appropriate, then the Insurer refusal to honor the written term providing $750,000 of personal property coverage would not constitute a breach of contract. But if reformation is inappropriate, then the Insurer's refusal to honor the contract's written terms would constitute a breach of contract.

The Insurer argues reformation is appropriate because the parties were mutually mistaken in executing the contract. To establish mutual mistake, the pleading party must show that *both* parties to a contract were mistaken about the existing facts when they executed the contract. *Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 771 (Pa. Super. Ct. 2009). A pleading party can prove mutual mistake by showing that a contract contains a scrivener's error that neither contracting party noticed or assented to at the time each executed the contract. *Zurich*, 968 A.2d at 771. Here, the Insurer argues that the parties intended to contract for $75,000 of personal

property coverage, that the written contract's provision of $750,000 of personal property coverage reflects a scrivener's error, and that neither party noticed the scrivener's error until after the fire.

But the Court cannot enter summary judgment in the Insurer's favor because there remains a genuine dispute as to whether the Insured noticed and assented to the scrivener's error when it executed the policy. The text of the written insurance policy clearly provides $750,000 of personal property coverage and contains an integration clause providing that the written contract supersedes all discussions of the agreement beyond the policy's four corners. JA 1, 46. And the law generally presumes that a party reads the contracts the party signs. *In re McCready's Est.*, 316 Pa. 246, 255 (1934). Further, the fact that the Insured paid a higher premium for this insurance policy than it would have paid for only $75,000 of coverage could support an inference that the Insured did in fact read and assent to the higher coverage. JA 1, 75. A reasonable factfinder could rely on this presumption and inference to conclude that the Insured had noticed the scrivener's error and assented to it when it executed the insurance contract.

The Insurer points to *Zurich American Insurance Company v. O'Hanlon*, 968 A.2d 765 (Pa. Super. Ct. 2009), to argue that the Court should reform the contract at summary judgment.[1] But *Zurich* is distinguishable from this case. In *Zurich*, *all* the evidence suggested that both contracting parties had failed to notice or assent to the scrivener's error in the contract. *See id.* at 771 (concluding that there was "not a single piece of evidence" suggesting the parties had intended to assent to the scrivener's error). Indeed, one of the contracting parties in *Zurich* even purchased an additional insurance policy that the scrivener's error rendered redundant. *Id.* While

---

[1] The Insured also points to *Twin City Fire Insurance Company v. Pittsburgh Corning Corporation*, 813 F. Supp. 1147 (W.D. Pa. 1992). But the *Twin City* opinion was written after trial, so it is inapposite in the current procedural posture of this case.

the one-sidedness of the record in *Zurich* may have supported summary judgment in that case, the same cannot be said of the record in this case.

Because a reasonable factfinder could review the record in this case and conclude that the Insured noticed and assented to the scrivener's error, the Court cannot conclude at summary judgment that the parties were mutually mistaken. And since the Court cannot conclude whether the parties were mutually mistaken, the Court cannot determine whether the contract has been breached or should be reformed. Accordingly, the Court cannot enter summary judgment in the Insurer's favor on the claims for reformation or breach of contract.

### b.  Bad Faith

The Insured claims that the Insurer has acted in bad faith by bringing this suit rather than honoring the written policy's provision of $750,000 of personal property coverage. On the record before this Court, however, the Court cannot agree.

To prevail on a claim of bad faith, an insured must prove that an insurer lacked a reasonable basis for denying a claim of coverage and recklessly disregarded its lack of reasonable basis in denying the claim. *Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 174 (2017); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa. Super. 108, 127 (1994). An insurer need not show that it was *correct* in denying a claim to defeat a subsequent claim of bad faith—the insurer need only show that it had a reasonable basis for denying the claim. *Wiessmann v. Nw. Mut. Life Ins. Co.*, No. 16-6261, 2018 U.S. Dist. LEXIS 86103, at *16 (E.D. Pa. May 22, 2018). An insurer does not act in bad faith by investigating and litigating legitimate issues of coverage. *Hyde Athletic Indus., Inc. v. Cont'l Cas. Co.*, 969 F. Supp. 289, 307 (E.D. Pa. 1997).

At trial, an insured must prove bad faith with clear and convincing evidence. *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa. Super. 108, 125 (1994). Because the insured faces a heightened burden of proof, its burden to survive summary judgment is "commensurately high." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

There is no genuine dispute about whether the Insurer had a reasonable basis for denying the Insured's claim, so the Court must enter summary judgment in the Insurer's favor. The Insurer denied the Insured's claim because the Insurer believed the written policy reflected a mutual mistake regarding the amount of coverage the parties had intended. Indeed, almost all the evidence that was in the Insured's possession when it denied the Insured's claim supported the Insured's belief that there had been a mutual mistake. The Insurer's broker had told the Insurer that the Insured desired $75,000 of personal property coverage, and that coverage was much more in line with the parties' previous insurance policies than was the $750,000 figure that ended up in the contract. *See* JA 64, 83.

The only evidence in the Insurer's possession that suggested the Insured had not been mistaken about the policy's higher coverage was the Insured's payment of the policy's commensurately higher premium.[2] But this lone piece of evidence, when considered in context of the fact that all the parties' communications had discussed only $75,000 of coverage, would not be enough to make it *unreasonable* for the Insurer to litigate the issue of mutual mistake. The Insured did not make any statement accompanying its premium payment that would indicate the

---

[2] After the Insurer denied the Insured's claim, the Insured sent the Insurer an email stating that the Insured had read the insurance policy upon receiving it and had assented to the expanded personal property coverage at that time. JA 128. But the contents of this email are hearsay and cannot, therefore be admitted for the truth of the matters they assert. Fed. R. Evid. 801, 802; *see also Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Accordingly, the Court does not treat this email as evidence that the Insured had in fact read and assented to the expanded coverage before the Insured executed the contract.

Insured had specifically noticed the increased coverage and assented to it. And the Insurer could not have known whether the Insured was in fact mistaken until conducting discovery—indeed, had the Insurer discovered a post-fire statement by the Insured that the Insured had been surprised to discover it was covered up to $750,000, then the Insurer would have been correct in seeking reformation. Because the Insurer did not possess evidence clearly demonstrating that the Insured had noticed the expanded coverage and assented to it and because litigation presented a reasonable chance of producing information that would have warranted reformation, the Insurer's decision to delay payment to litigate the issue of mutual mistake was reasonable as a matter of law.

The Insured argues that the Insurer acted in bad faith by attempting to unilaterally modify the insurance policy after the fire. *See* Def. Mem. Law Supp. Resp. Opp. Pl.'s Mot. Summ. J., ECF No. 25, at 26–28. But this argument is unavailing because the Insurer did not *rely* on the post-fire modification as the basis for limiting the Insured's coverage. The Insurer limited the Insured's coverage only because the Insurer believed there had been a mutual mistake, so the only question before the Court is whether *that* basis was reasonable.

As discussed above, the factfinder might ultimately conclude that there was no mutual mistake between the parties. But the Insurer was not unreasonable in *believing* that there had been a mutual mistake and acting on that belief when the pre-discovery evidence in the Insurer's possession supported such a belief.

## V.    CONCLUSION

A reasonable factfinder could conclude that the Insured read and assented to the expanded coverage provided for in the insurance policy the parties executed. For that reason, the Court cannot enter judgment in favor of the Insurer on its claim for reformation or on the

Insured's claim for breach of contract. But, on the record before this Court construed in the light most favorable to the Insured, the Insured cannot prevail on its claim of bad faith as a matter of law. Accordingly, the Court enters judgment in favor of the Insurer on that claim.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge